**JOY TECHNOLOGIES, INC., Plaintiff,**

v.

**FLAKT, INC., Defendant.**

**Civ. A. No. 89-533-JJF.**

United States District Court,
D. Delaware.

May 3, 1991.

Robert A. Schroeder, Edward G. Poplawski, Joseph T. Jakubek, Pretty, Schroeder, Brueggemann & Clark, Los Angeles, Cal., (Collins J. Seitz, Jr., Connolly, Bove, Lodge & Hutz, Wilmington, Del., of counsel), for plaintiff.

Paul Lempel, Bradford J. Badke, Lynne Darcy, Donna M. Praisse, Robert J. Rando, Kenyon & Kenyon, New York City (Allen M. Terrell, Jr., Nathan B. Ploener, Richards Layton & Finger, Wilmington, Del., of counsel), for defendant.

## MEMORANDUM OPINION

FARNAN, District Judge.

Plaintiff, Joy Technologies, Inc., ("Joy"), filed the instant patent infringement action against defendant Flakt, Inc. ("Flakt") on September, 28, 1989, for infringement of Patent No. 4,279,873 ("the '873 patent"), entitled "Process for Flue Gas Desulfurization."

Flakt filed a Motion to Dismiss on April 2, 1990, a Motion for Separate Trials and a Stay of Discovery on July 18, 1990, a Motion for a Protective Order Staying Discovery (pertaining to evidence on damages until the Motion for Separate Trials is resolved) on July 18, 1990, and a Motion for a Protective Order on November 14, 1990, as amended on November 26, 1990, which motions are presently before the Court.

## I. FACTS

A/S Niro Atomizer ("Niro"), a Danish company, is the owner of the '873 patent, which relates to a process by which sulfur dioxide is removed from the flue gas associated with the combustion of sulfur-containing fuels such as coal. Such processes are commonly referred to as flue gas desulfurization ("FGD") systems. The '873 patent expires on July 21, 1998.

In the late 1970s, Joy entered into a series of agreements with Niro for the cooperative development and marketing of systems and plants for the removal of pollutants from flue and other contaminated gases. The agreement dated June 24, 1985 (the "1985 Agreement") granted Joy[1] what in the Agreement is called an "exclusive" royalty-bearing license in North America for "proprietary information," which is defined in Section ("Sec.") 1.13 as including patents, trademarks, copyrights, software, and other information, relating to the FGD process, including the process contained in the '873 patent.

The "exclusive" license in North America granted to Joy under the 1985 Agreement was subject to Niro's right to "participate in any use or operation of a Licensed Sys-

---

1. Plaintiff, Joy Technologies, Inc. ("Joy"), and all predecessor companies, including Joy Manu- facturing Company, will be collectively referred to as "Joy."

tem or part thereof in which it, or any of its subsidiaries, has an investment." Sec. 13.1. Section 1.9 of the 1985 Agreement defines "Licensed System" as "the processes and equipment associated with the removal of gaseous and particulate pollutants from flue or other contaminated gases utilizing spray absorption technology."

In addition, despite the existence of the "exclusive" license, Niro was permitted to use the "proprietary information" for "any other agreements for Licensed Systems for which a binding contract or purchase order has been entered into prior to the" effective date of the 1985 Agreement. Sec. 13.2.

Under the 1985 Agreement, Joy was granted an "exclusive" right to grant sublicenses in North America, but only to its subsidiaries for as long as the subsidiaries remained subsidiaries of Joy. *See* Article ("Art.") II(a), Sec. 14.12. As for assignment, the Agreement provides that Joy may not assign the Agreement without the prior approval of Niro. Sec. 14.12. The 1985 Agreement states that in every contract Joy enters into under the Agreement, Joy shall attempt in good faith to include a specific disclaimer stating that Joy is only a licensee under an agreement with Niro, and that Niro has no obligation to the other contracting party, except as to specific provisions in the contract agreed to by Niro. Sec. 9.2.

In the event of a material default by Joy, Niro may terminate the Agreement, and Joy's right to use the '873 patent ceases. Secs. 12.2, 12.5. Material default is defined to include Joy purchasing certain equipment, specifically Rotary Atomizer Assemblies, from any supplier other than Niro. *See* Secs. 1.8, 3.5, 12.3. However, if the Agreement is terminated, but not due to a material default by Joy, Joy may continue to use patents licensed under the Agreement until July 1, 2000. *See* Sec. 12.5.

The 1985 Agreement further states that Joy is not permitted to use the proprietary information in licensed activities outside of North America. Sec. 9.3.

Under the 1985 Agreement, the decision of pursuing patent infringement litigation rests with Niro. Sec. 14.9. However, upon notice of infringement, if Niro does not proceed with suit within ninety days from such notice, Joy has the option to prosecute the suit, in the name of Niro, at Joy's cost "and for [Joy]'s sole benefit." *Id.* The Agreement further states that "[Niro] will execute all instruments and do all acts and things and give [Joy] all information and assistance, without charge, to enable suit to be instituted and prosecuted to a successful conclusion." *Id.*

In a September 22, 1989 letter agreement (the "1989 Letter Agreement") from Robert C. Hyde ("Hyde"), Vice–President and General Manager of Joy's Western Precipitation Division, to Ole Anderson ("Anderson"), President of Niro, Hyde stated that the letter was to confirm the parties' arrangement as to patent infringement litigation against Flakt for infringement of the '873 patent. The agreement included the following: (1) Niro assigned to Joy the exclusive right to sue Flakt for infringement of the '873 patent, and assigned to Joy all damages for past and future infringement; (2) Niro will receive one-half of the net proceeds of any recovery obtained by Joy, whether by virtue of a judgment or settlement; (3) Joy will be reimbursed by Niro for one-half of all fees and expenses connected with the lawsuit; (4) Joy and Niro will each pay their own costs associated with cooperating with counsel selected by Joy to prosecute any patent infringement action under the agreement; and (5) any settlement with Flakt shall be agreed to jointly by Joy and Niro.

## II. ISSUES

### A. *Motion to Dismiss*

Flakt argues that under 35 U.S.C. § 281 and Fed.R.Civ.P. 12(b), the Complaint should be dismissed because Niro, the owner of the '873 patent, is not a party to this patent infringement action. Flakt contends that the patent owner must be a party to perfect the subject matter jurisdiction of this Court.

Flakt additionally argues that the action should be dismissed under Fed.R.Civ.P. 19 for failure to join an indispensable party, specifically Niro, the owner of the '873 patent. Flakt submits that because Niro is outside the jurisdiction of this Court, Niro cannot be brought in as a counterclaim defendant.

Flakt contends that equity demands that the suit be dismissed because Flakt would be prejudiced by litigation of the '873 patent in Niro's absence. Finally, Flakt argues that the public interest in fully litigating issues of patent infringement requires that the suit be dismissed in Niro's absence.

Joy contends that the issue is one of standing, not subject matter jurisdiction, and that Joy has standing to sue Flakt for infringement because Joy is effectively the assignee of the '873 patent. Flakt contends that the Joy/Niro agreements do not retain any rights that are inconsistent with an assignment of the '873 patent. Further, Joy argues that Niro is not a necessary party to the patent infringement action. In the alternative, Joy argues that if Niro is an indispensable party under Fed.R.Civ.P. 19(b), then Niro should be joined as an involuntary plaintiff, instead of dismissing the action.

On the issue of possible prejudice to Flakt, Joy contends that the doctrines of res judicata and collateral estoppel would preclude Niro from relitigating these same issues against Flakt.

### B. *Flakt's Motion for Separate Trials and to Stay Discovery*

Flakt contends that the issues of liability and damages should be bifurcated for trial in order to avoid confusion to the jury, and to promote the most expeditious manner of resolving the issues. Flakt asserts that there is virtually no overlap in the issues of liability and damages, thus there is no danger of two separate juries finding conflicting facts. If two separate trials are ordered, Flakt contends that a stay of discovery on the issue of damages would be appropriate.

In addition, Flakt has filed a Motion for a Protective Order Staying Discovery on the issue of damages, until the Motion for Separate Trials is decided.

As an initial matter, Joy does not oppose the bifurcation of the issues of liability and damages. However, Joy opposes bifurcation into two separate trials because Joy asserts that there is a substantial overlap of issues, that two separate trials would cause the plaintiff substantial delay, and that Flakt delayed bringing its bifurcation motion until it obtained from Joy during discovery the type of information on damages, allegedly sensitive, that it now seeks to withhold.

### C. *Flakt's Motion for a Protective Order*

Flakt seeks a protective order preventing Joy from seeking discovery from any customers or potential customers of Flakt, until Joy makes a showing that the information it seeks is necessary and relevant to this action, and that the information cannot be obtained from any other source, particularly Flakt.

In support of its motion, Flakt contends that Joy has already requested from Flakt most of the information that it now seeks from Flakt's customers. Flakt argues that Joy's attempted discovery from Flakt's customers is a form of harassment which could jeopardize Flakt's business relationship with its customers. Flakt contends that Joy has failed to demonstrate that the information it seeks cannot be obtained from Flakt. Flakt further contends that Joy is seeking, from Flakt's customers, trade secret information that is not reasonably calculated to lead to the discovery of admissible evidence, and which disclosure could lead to irreparable harm to Flakt.

Joy responds that Flakt lacks standing to challenge certain discovery requests of third parties, that the protective order sought is overly broad, and that Flakt has failed to demonstrate that it is entitled to the protective order. Joy additionally asserts that Flakt's charges of harassment and harm are unfounded and based on speculation.

**846**

## III. DISCUSSION

### A. *Motion to Dismiss*

#### 1. License v. Assignment

■ The Court finds, despite the language in the Joy/Niro agreements, that Joy is an enhanced licensee, and not an assignee, as Joy asserts. In *Waterman v. Mackenzie,* the Supreme Court held that "[w]hether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions." 138 U.S. 252, 256, 11 S.Ct. 334, 335, 34 L.Ed. 923 (1891). In *Waterman,* the Court stated:

> The patentee or his assigns may, by instrument in writing, assign, grant, and convey, either (1) the whole patent, comprising the exclusive right to make, use, and vend the invention throughout the United States; or (2) an undivided part or share of that exclusive right; or (3) the exclusive right under the patent within and throughout a specified part of the United States.... A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers. In the second case, jointly with the assignor. In the first and third cases, in the name of the assignee alone. *Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement.*

*Id.* at 255, 11 S.Ct. at 335 (emphasis added).

■ The Court first notes that none of the agreements between Joy and Niro profess to give Joy an "assignment" of the '873 patent, in specific language. Nonetheless, Joy asserts that the Joy/Niro agreements, taken together, establish that Joy is, *in effect,* an assignee. Specifically, Joy asserts that the agreements give Joy the exclusive right to make, use and sell the invention in North America, thus satisfying the requirements of an assignment under the third scenario in *Waterman.* Joy further contends that the agreements

go beyond that which is required under *Waterman* because Joy is given the exclusive right to sublicense the '873 patent and to sue infringers of the '873 patent, pursuant to the 1989 Letter Agreement.

The Court disagrees. Contrary to Joy's assertions, the 1985 Agreement, read in its entirety, gives Joy merely the right to sublicense the '873 patent to its subsidiaries, for as long as they remain subsidiaries. *See* Art. II(a), and Sec. 14.12. Art. II(a) states that Joy has "an exclusive (except for those activities in North America which LICENSOR is permitted to pursue under the provisions of XIII of this Agreement) right, including the right to grant sublicenses (*permitted hereunder*)." (emphasis added). Section 14.12, entitled "Assignments; Sublicenses" states that "[t]he LICENSEE shall be permitted to sublicense the rights and licenses granted hereunder to its subsidiaries, for so long as those subsidiaries remain a subsidiary of LICENSEE...." The Court concludes that Sec. 14.12 limits a broad reading of Art. II(a) which Joy advocates, because of the words "permitted hereunder." Otherwise, the words "permitted hereunder" would be meaningless.

■ The Court is similarly unconvinced that Joy has the exclusive right to sue all who infringe the '873 patent. While the 1989 Letter Agreement purports to give Joy the exclusive right to sue Flakt for infringement of the '873 patent, the Court cannot agree with a broader interpretation of the right to sue for infringement of the '873 patent. The Court concludes that subsection 1 of the 1989 Letter Agreement—"Niro grants to Joy the exclusive right to bring suit for infringement of that United States patent and assigns to Joy all damages for past and future infringements"—must be read in conjunction with the prefatory section of the agreement which states that the letter agreement is to confirm the parties' "arrangement" under which Joy, the "exclusive U.S. licensee" of Niro will bring suit against Flakt for infringement of the '873 patent. The Court's view is that such a reading of the agreement is compelled, since subsection 1 spe-

cifically refers to the preface when it states "for infringement of *that* United States patent" (emphasis added), instead of mentioning the '873 patent by name in the subsection. Any other interpretation is merely the work of lawyering designed to rectify the effects which result from a straightforward reading of the 1989 Letter Agreement.

The Court thus concludes that while Joy may have the exclusive right to sue Flakt for infringement of the '873 patent, Joy does not have an assignment of the right to sue any other infringers of the '873 patent.

Thus, under the analysis of *Waterman,* because Niro has reserved one or more substantial rights under the Joy/Niro agreements, the rights that Joy acquired in the '873 patent do not amount to an assignment, and therefore Joy is a licensee. *See Waterman,* 138 U.S. at 255, 11 S.Ct. at 335.

2. Involuntary Plaintiff

Flakt advocates dismissal under Fed. R.Civ.P. 19(b) because Niro is an indispensable party, who is not subject to the jurisdiction of this Court.

Fed.R.Civ.P. 19 provides in pertinent part:

> **(a) Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff.

· · · · ·

> **(b) Determination by Court Whenever Joinder Not Feasible.** If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

In *Independent Wireless Telegraph Co. v. Radio Corp. of America,* 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926), the Supreme Court held that in an infringement action instituted by an exclusive licensee, the owner of the patent is indispensable as a party, "not only to give jurisdiction under the patent laws but also, in most cases, to enable the alleged infringer to respond in one action to all claims of infringement for his act, and thus either to defeat all claims in the one action, or by satisfying one adverse decree to bar all subsequent actions." *Id.* at 468, 46 S.Ct. at 169. The Supreme Court also held that when the patent owner is beyond the jurisdiction of the Court and refuses to join the action voluntarily upon notice of the action, the exclusive licensee may make the patent owner a co-plaintiff without the owner's consent if there is no other way of securing justice. *Id.* at 472, 46 S.Ct. at 170. *Accord Sheldon v. West Bend Equipment Corp.,* 718 F.2d 603, 606 (3d Cir.1983). It is clear that the patent owner may be joined as an involuntary plaintiff only after he has been given the chance to join the action voluntar-

ily and declines to do so, and that if the patent owner continues to refuse to take part in the action after being joined as an involuntary plaintiff, he will nonetheless be bound by any decree which follows. *Id.* 269 U.S. at 459, 46 S.Ct. at 166.

■ For purposes of this case, the Court finds that Niro, a Danish corporation, is beyond the jurisdiction of the Court and has refused to join the action voluntarily upon the request of Joy. Further, the Court finds that an adequate and binding remedy cannot be secured without the presence of Niro.[2]

Under the circumstances, the Court has no choice but to grant Joy leave to join Niro as an involuntary plaintiff pursuant to Fed.R.Civ.P. 19(a). Once Joy seeks to join Niro as an involuntary plaintiff, Flakt's Motion to Dismiss will be denied, however in the interim the Court will reserve decision on Flakt's motion.

### B. *Flakt's Motion for Separate Trials and a Stay of Discovery*

As stated earlier, Flakt contends that the liability and damages phases of the instant trial should be bifurcated into two separate trials in order that (1) the jury would be better able to comprehend the complex and diverse issues presented; (2) the trial be conducted as expeditiously as possible; and (3) expensive and time-consuming pre-trial discovery on damages be avoided if Joy does not prevail at the liability stage. Flakt asserts that there is virtually no overlap in the issues of liability and damages, thus there is no danger of two separate juries finding conflicting facts. If two separate trials are ordered, Flakt contends that a stay of discovery on the issue of damages would be appropriate.

Joy opposes bifurcation into two separate trials because Joy asserts that (1) there is a substantial overlap of issues, namely as to commercial success, evaluation of prior art, and interpretation of the Joy/Niro agreements; (3) two separate trials would cause the plaintiff substantial delay; (3) Flakt offers no evidence to support its assertion of alleged confidentiality of information that is discoverable in the damages phase; (4) factual questions resolved by one jury, which could be re-examined by another jury, violates the Seventh Amendment; and (5) Flakt delayed bringing its bifurcation motion until it obtained from Joy the type of information on damages, allegedly sensitive, that it now seeks to withhold.

Fed.R.Civ.P. 42(b) states in pertinent part:

**Separate Trials.** The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, *may* order a separate trial of any claim.

(emphasis added).

■ The Court is given broad discretion in determining, on a case-by-case basis, whether bifurcation is appropriate. *Lis v. Robert Packer Hospital,* 579 F.2d 819, 824 (3d Cir.1978). The Court finds that Flakt has failed to demonstrate a compelling reason in support of its application for bifurcation. In fact, the Court finds that there is at least a limited amount of overlapping evidence on the issue of evaluation of prior art, first as it pertains to validity and infringement of the '873 patent, and secondly as it pertains to damages for infringement, if infringement is found. Although a minor overlap of evidence does not militate strongly against bifurcation, it certainly does not weigh in favor of bifurcation. *See Willemijn Houdstermaatschaapij v. Apollo Computer,* 707 F.Supp. 1429, 1434 (D.Del.1989).

The Court also finds that there is at least minimally overlapping evidence on commercial success first as it pertains to infringement and second as it pertains to damages.

Further, defendant Flakt's assertion of the affirmative defense of laches, in ¶ 27 of its Answer to the instant Complaint, also weighs against bifurcation. In order to

---

**2.** The Court makes this finding despite a May 8, 1990 letter from Anderson, President of Niro, to counsel for Joy in which Niro states: "if absolutely required by the court … A/S Niro Atom- izer would agree to be bound by the decision of that court as to the validity, enforceability and scope of our U.S. Patent No. 4,279,873."

prove laches, the defendant must prove (1) unreasonable delay in the assertion of the claim; and (2) prejudice or resulting injury. Joy asserts that in order to contest the laches defense, it must be able to inquire into alleged damages during the liability phase of the trial. The Court, although not fully convinced of the merit of the damages aspect of the laches defense, finds again that there may be some overlap in the presentation of evidence.

In addition, the Court believes there are other significant reasons that favor a unitary trial, including (1) the danger of two separate juries finding conflicting facts; (2) inevitable delay, and resulting prejudice to plaintiff, of two separate trials. *See Willemijn Houdstermaatschaapij,* 707 F.Supp. at 1435; and (3) the possibility of bifurcation of the issues of liability and damages in two separate phases of a single trial.

With all this in mind, the Court concludes that Flakt's Motion for Separate Trials, and for a Stay of Discovery, shall be denied, and therefore, Flakt's Motion for a Protective Order Staying Discovery until the Motion for Separate Trials is decided is now moot.

## C. *Flakt's Motion for a Protective Order*

 Flakt contends that Joy's attempted discovery from Flakt's customers is a form of harassment which could jeopardize Flakt's business relationship with its customers, possibly leading to irreparable injury to Flakt, especially in light of the fact that Joy is a major competitor of Flakt in the sale of FGD systems. Flakt argues that Joy has failed to demonstrate that the information it seeks cannot be obtained from Flakt. Flakt contends that Joy has requested from Flakt much of the same information that Joy has requested from Flakt's customers.

Flakt seeks a protective order preventing Joy from seeking discovery from any customers or potential customers of Flakt, until Joy makes a showing that the information it seeks is necessary and relevant to

this action, and that the information cannot be obtained from any other source, particularly Flakt.

In response, Joy asserts that the information sought is both relevant and necessary to this action. Joy argues that Flakt lacks standing to challenge certain discovery requests of third parties, that the protective order sought is overly broad, and that Flakt has failed to demonstrate that it is entitled to the protective order. Specifically, Joy contends that Flakt has not shown that the information that Joy seeks from Flakt's customers constitutes trade secrets, and that disclosure of alleged trade secrets under the existing protective order would harm Flakt. Joy additionally asserts that Flakt's charges of harassment and harm are unfounded and based on speculation.

At this juncture, the Court cannot ascertain whether Joy is seeking discovery from Flakt's customers in an attempt to harass. Nonetheless, it is undisputed that Joy and Flakt are fierce competitors in the technology that is the subject of this lawsuit, and Joy has not convinced the Court that the same information it seeks from third parties is not available from Flakt. Therefore, unless Joy can demonstrate that it has a specific need for evidence available only from third party customers of Flakt, the Court concludes that Flakt and its customers are entitled to protection. Thus, Flakt's Motion for a Protective Order will be granted, as asserted in its amendment to the Motion relating to discovery of information from Flakt's customers.

## IV. CONCLUSION

For the reasons cited herein (1) Joy is granted leave to join Niro as an involuntary plaintiff; (2) The Court reserves decision on Flakt's Motion to Dismiss; (3) Flakt's Motion for Separate Trials and a Stay of Discovery is DENIED; (4) Flakt's Motion for a Protective Order Staying Discovery (pending disposition of the Motion for Separate Trials) is MOOT; and (5) Flakt's Motion for a Protective Order is GRANTED, as asserted in its amended mo-

tion relating to discovery of information from Flakt's customers.