**HUNTER DOUGLAS, INC., Plaintiff,**

v.

**COMFORTEX CORPORATION,**
**Defendant.**

No. 98–CV–0479(LEK/DNH).

United States District Court,
N.D. New York.

March 3, 1999.

Pennie & Edmonds, L.L.P., New York City (James W. Dabney, James G. Markey, Brian M. Rothery, of counsel), De-Graff, Foy, Holt–Harris, Mealey and Kunz, L.L.P., Albany, NY (James T. Potter, of counsel), for Plaintiff.

Baker & Botts, L.L.P., New York City (Robert Neuner, Karen Wuertz, David W. Whealan, of counsel), Harris Beach & Wilcox, Albany, NY (Daniel M. Sleasman, of counsel), for Defendant.

## MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

### I. Facts

Plaintiff Hunter Douglas, Inc. ("Hunter Douglas") brings this action against Defendant Comfortex Corporation ("Comfortex") alleging that Comfortex has infringed Hunter Douglas patents 5,313,999 (the "'999 patent")[1] and 6,631,217 (the "'217 patent").[2] Presently before this Court are parties' cross-motions for separation pursuant to Federal Rule of Civil Procedure 42(b). Hunter Douglas seeks to present the patent issues first and then all remaining counterclaims as well as Comfortex's patent misuse defense in a second phase. Comfortex, on the other hand, recommends trying liability and damages issues separately such that all claims (patent issues and Comfortex's counterclaims) would be presented in a first liability phase and then any remaining damages issues would be presented in a second phase. For the following reasons, Hunter Douglas's motion is hereby GRANTED-in-part and DENIED-in-part; Comfortex's motion is hereby GRANTED-in-part and DENIED-in-part.

### II. Discussion

Fed.R.Civ.P. 42(b) governs the present cross-motions. Rule 42(b) provides the following:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by statute of the United States.

"In deciding whether one trial or separate trials will best serve the convenience of the parties and the court, avoid prejudice, and minimize expense and delay, the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed.Cir. 1986). "[A] district court has broad discretion in separating issues and claims for trial...." *Gardco Manufacturing, Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1212 (Fed.Cir.1987).

1. The 999 patent is directed to a window covering comprising a plurality of opaque flexible vanes bonded on one side to a first sheet of translucent material and on the opposite face of the opposite side to a second sheet of translucent material such that the opaque vanes are moved to an open position by relative vertical movement of the first and second sheets.

2. The 217 patent provides for an expandable-collapsible honeycomb structure with longitudinally extending cells. The cells are formed from a single length of material such that the front face of one cell is the opposite side of the same piece of material that forms the back face of an adjacent cell.

The claims presented by both Hunter Douglas and Comfortex form the matrix of this Court's analysis. Hunter Douglas alleges that Comfortex has infringed several claims of the subject patents. In response to the infringement action, Comfortex asserts the following affirmative defenses: (1) both the 1999 and '217 patents are invalid for failing to comply with one or more sections of the patent law, *see* Comfortex's Answer and Counterclaims, Dkt. # 4, ¶¶ 21, 23; (2) Comfortex has not infringed either the '999 or '217 patent, *see id.* ¶¶ 22, 24; (3) Hunter Douglas's claims are barred by the doctrines of unclean hands, *see id.* ¶ 25, (4) patent misuse, *see id.* ¶ 26, and (5) prosecution history estoppel. *See id.* ¶ 28. In addition, Comfortex has propounded counterclaims based on patent, federal antitrust, and state tort law. Specifically, Comfortex makes the following counterclaims: (1) a declaratory judgment as to the invalidity of both the '999 and '217 patents and Comfortex's noninfringement of same; (2) Lanham Act false advertising and false representation; (3) injurious falsehood; (4) malicious prosecution; (5) unfair competition under New York State common law; (6) federal antitrust violations predicated on 15 U.S.C. §§ 2, 4, and 16; (7) tortious interference with contractual relationships; (8) tortious interference with prospective advantage; and (9) prima facie tort. Given their complexity, the antitrust issues are likely to dominate the presentation of Comfortex's counterclaims. In pertinent part, therefore, this case falls within the amorphous area of patent/antitrust overlap.

Upon first blush, the areas of patent and antitrust law seem at odds with one another. A patent confers specific property rights for a limited time period. It also places the sovereign's imprimatur upon the patentee's right to exclude others from the use, sale, and practice of the invention that is defined within the patent document. 35 U.S.C. § 154.[3] Antitrust principles, however, mandate the preservation of competition, *see Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 458, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993) ("The law directs itself ... against conduct which unfairly tends to destroy competition itself"), and endeavor to limit actions which tend to consolidate. *See gen.,* Stephen F. Ross, *Principles of Antitrust Law,* 3–11 (1993) (describing goals of antitrust law). Unlike patent law where it is commonplace, under certain circumstances one may survive antitrust scrutiny but rarely receives an affirmative and prospective license to exclude.

The conflict between patent and antitrust arises when a patentee seeks to protect the property rights granted vis-a-vis the patent. *See* 35 U.S.C. § 1, et seq. (delineating rights conferred by patent statute). An effort to enforce those rights may be viewed as an attempt to extend them, temporally or otherwise, beyond the bounds set by the patent statute. In that sense, an ostensible desire to protect is charged with a more inimical design that allegedly runs afoul of the antitrust laws. *See e.g.,* 15 U.S.C. § 2.

From a policy perspective, however, patent and antitrust are entirely consistent.

**3.** Indeed, the Supreme Court has described patents as a monopoly or a legal monopoly. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 135, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969) (referring to patent as a "lawful monopoly"); *Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 229, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) ("The grant of a patent is the grant of a statutory monopoly."); *Bement v. National Harrow Co.,* 186 U.S. 70, 91, 22 S.Ct. 747, 46 L.Ed. 1058 (1902) ("The very object of [the patent] law is monopoly...."). But see *United States v. Dubilier Condenser Corp.,* 289 U.S. 178, 186, 53 S.Ct. 554, 77 L.Ed. 1114 (1933) where the Court stated:

The term monopoly connotes the giving of an exclusive privilege for buying, selling, working, or using a thing which the public freely enjoyed prior to the grant. Thus a monopoly takes something from the people. An inventor deprives the public of nothing which it enjoyed before his discovery, but gives something of value to the community by adding to the sum of human knowledge. (Citations omitted).

That is, both seek to promote innovation and enhance consumer welfare. *See* United States Dept. of Justice and Fed. Trade Comm'n Antitrust Guidelines for the Licensing of Intellectual Property (1995). *See also Atari Games Corp. v. Nintendo of America, Inc.,* 897 F.2d 1572, 1576 (Fed. Cir.1990), ("[T]he aims and objectives of patent and antitrust laws may seem, at first glance, wholly at odds. However, the two bodies of law are actually complementary, as both are aimed at encouraging innovation, industry and competition.") (citation omitted).[4] Official recognition of this principle was concomitant with the transformation in antitrust jurisprudence from encouragement of expedient per se rules to more fact-intensive inquiries requiring examination of the anticompetitive effects stemming from a party's allegedly wrongful action or actions. *See gen., SCM Corp. v. Xerox Corp.,* 645 F.2d 1195, 1203 (2nd Cir.1981). *Compare Standard Sanitary Mfg. Co. v. United States,* 226 U.S. 20, 33 S.Ct. 9, 57 L.Ed. 107 (1912) and *Motion Picture Patents Co. v. Universal Film Mfg. Co.,* 243 U.S. 502, 513, 37 S.Ct. 416, 61 L.Ed. 871 (1917) with discussion in Ward S. Bowman, Jr., *Patent and Antitrust Law: A Legal & Economic Appraisal* (1973). The fusion of patent and antitrust principles as a matter of policy has permeated the patent/antitrust overlap from a doctrinal perspective as well. In accordance therewith, efforts to enforce patent rights no longer automatically raise the specter of monopolistic intent. Instead, like other aspects of antitrust law, courts partake in a fuller examination of the effects such efforts have in the relevant markets.

As in the case sub judice, the propriety of a patentee's actions relative to antitrust concerns is commonly raised by a defendant in response to a charge of patent infringement. This practice has left courts with the unenviable task of trial management in light of the complex legal and factual issues brought to bear in patent/antitrust cases. Specifically, courts are called upon to review the factors reflected in Fed.R.Civ.P. 42(b) to determine the extent to which patent and antitrust issues must be distinct in order to warrant separation.

■ Several courts, including the Federal Circuit, have addressed the foregoing by separating the patent issues from those grounded in antitrust. *See, e.g., In re Innotron Diagnostics,* 800 F.2d 1077 (Fed. Cir.1986); *Virginia Panel Corp. v. Mac Panel Co.,* 887 F.Supp. 880, 883–84 (W.D.Va.1995), *aff'd,* 133 F.3d 860 (Fed. Cir.1997); *Alarm Device Mfg. Co. v. Alarm Products Intern., Inc.,* 60 F.R.D. 199, 202 (E.D.N.Y.1973) ("More often than not, separate trials of patent validity-infringement claims and misuse-antitrust claims have been found to be salutary.") (citing cases).[5] In *In re Innotron,* for

---

**4.** In fact, the Federal Circuit has long maintained that there is no tension between antitrust and patent and has rejected the notion that a patent should be categorized as a "monopoly." In *Schenck v. Nortron Corp.,* 713 F.2d 782 (Fed.Cir.1983), the court stated:

A patent, under the statute, is property. 35 U.S.C. § 261. Nowhere in any statute is a patent described as a monopoly. The patent right is but the right to exclude others, the very definition of 'property.' That the property right represented by a patent, like other property rights, may be used in a scheme violative of antitrust laws creates no 'conflict' between laws establishing any of those property rights and the antitrust laws.... It is but an obfuscation to refer to a patent as 'the patent monopoly' or to

describe a patent as an exception to the general rule against monopolies.
*Id.* at 786 n. 3 (citation omitted).

**5.** The *Alarm Device* court found the following:

Among the various reasons found in the cases supporting the rationale of separate trials of antitrust and patent issues are: (1) The issues, documentary proof, and witnesses in the validity-infringement claim are essentially different from those of the antitrust-misuse claim; (2) Consideration of all the claims at a single trial is burdensome; (3) The patent validity and infringement issues are generally less complex and require less discovery than the antitrust issues, and therefore, are ready for trial sooner; (4) The patent issues may be triable to

example, the Federal Circuit noted with approval the "standard practice of separating for trial patent issues and those raised in an antitrust counterclaim." 800 F.2d at 1084. *See also Brandt, Inc. v. Crane,* 97 F.R.D. 707, 708 (N.D.Ill.1983) (adopting the 'general rule' that separating patent and antitrust issues serves the purposes of convenience, expedience, and economy). After examining the four standard Rule 42(b) factors, the *Innotron* court concluded that the district court's decision to separate the patent and antitrust issues was appropriate because of the following reasons:

> (1) Economy is served because in the trial of the patent issues the validity of the patent and Innotron's affirmative defenses will be determined and will become law of the case and thus removed from trial on the original antitrust issues; (2) Convenience of all is served in trying the less complex patent issues first; (3) Expedition is served because the patent issues on the present schedule will be ready for trial more than a year before the antitrust issue can be ready; (4) Avoidance of prejudice and confusion is served in trying first the patent issues, without injecting the different counterclaim issues which require different proof and different witnesses.

*Id.* at 1085. This Court reviews the foregoing considerations to determine whether separation is appropriate here as well.

### A. Hunter Douglas's Proposal

#### 1. Judicial Economy

■ Separating the patent issues (infringement, validity, enforceability, and Comfortex's counterclaims seeking otherwise) from Comfortex's other counterclaims promotes the interest of judicial economy. "[A]s a number of courts have noted, it is the interest of efficient judicial administration that controls the court's exercise of discretion, rather than the wishes of one or more of the parties." *Eaton Corp. v. Auburn Gear Inc.,* 8 U.S.P.Q.2d 1373, 1375 (N.D.Ind.1988). Here, resolution of certain matters during the patent trial may partially or entirely eviscerate several of Comfortex's counterclaims, including those predicated on federal antitrust law.

Comfortex prays for a finding that Hunter Douglas "acted with specific intent to monopolize and to maintain its monopoly," Comfortex's Answer and Counterclaims, at Counterclaims ¶ 33, Dkt. # 4, in violation of § 2 of the Sherman Antitrust Act, 15 U.S.C. § 1, et seq. (1994). Comfortex bases this allegation on its contention that Hunter Douglas's patent infringement litigation is "objectively baseless" and brought in bad faith. *Id.* at ¶¶ 30–31.[6]

■ Section 2 of the Sherman Antitrust Act provides the following:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $10,000,000 if a corporation, or, if any other person, $350,000, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 2 (1994). Section 2 covers three violations of antitrust law: (1) monopolization, (2) attempted monopolization, and (3) conspiracy to monopolize.[7] The

---

the court while the antitrust claims are triable by jury if demanded; (5) In the usual case separate counsel are retained to try the patent and antitrust claims and separate trials serve to economize counsel's time. 60 F.R.D. at 202.

**6.** It should be noted that Comfortex has recently moved to amend its Answer and Coun-

terclaims. Comfortex has added, *inter alia,* allegations of tying, Comfortex's Amended Answer and Counterclaims, ¶¶ 33–39, and refusal to deal. *Id.* at ¶ 40. Comfortex's motion to amend is currently pending before this Court.

**7.** At this time, conspiracy to monopolize is not a claim in this case.

conduct of a single firm, governed by § 2, "is unlawful only when it threatens actual monopolization." *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). *See also Lorain Journal Co. v. United States*, 342 U.S. 143, 154, 72 S.Ct. 181, 96 L.Ed. 162 (1951). That is, a monopoly in and of itself is not unlawful. *See United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966); *National Ass'n of Pharmaceutical Mfrs., Inc. v. Ayerst Labs.*, 850 F.2d 904, 914 (2nd Cir. 1988). Monopolization requires a showing of (1) the possession of monopoly power[8] in the relevant market[9] and (2) willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. *See Grinnell Corp.*, 384 U.S. at 570–71, 86 S.Ct. 1698. Attempted monopolization differs from monopolization in that a claimant must show (1) anticompetitive or predatory behavior, (2) a dangerous probability of success, and (3) a specific intent to monopolize. *Ayerst Labs.*, 850 F.2d at 914. Thus, in order to establish either monopolization or attempted monopolization, the alleged monopolizer must have engaged in some exclusionary or anticompetitive behavior. *See* Areeda, *Antitrust Law* ¶ 517 at 70–79 (1978).

■■■ Bringing a patent infringement suit that is either "objectively baseless", *see Handgards, Inc. v. Ethicon, Inc. (Handgards I)*, 601 F.2d 986 (9th Cir. 1979), or based on a fraud perpetrated on the Patent and Trademark Office ("PTO") relative to the subject patent, *see Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), could constitute an exclusionary or wrongful action warranting § 2 condemnation. Here, Comfortex has alleged that Hunter Douglas's underlying patent infringement suit is "objectively baseless."[10]

■■■ In order to successfully prosecute its § 2 claim, therefore, Comfortex will have to overcome, by clear and convincing evidence, the presumption that Hunter Douglas acted reasonably in bringing the underlying patent infringement action. *Handgards*, 601 F.2d at 996 (holding that a patent infringement action is presumed reasonable and that one could overcome that presumption only through clear and convincing evidence). This presumption stems from the fact that those individuals who petition the government for assistance are awarded the full panoply of protections guaranteed by the First Amendment and are thus immune from antitrust liability.[11] As an exception to

---

8. Monopoly power is the power to fix prices or exclude or restrict competition in a relevant market. *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391, 394–96, 76 S.Ct. 994, 100 L.Ed. 1264 (1956).

9. The relevant market must be defined according to both geography and the product or service at issue. *See gen., Phillip Areeda & D. Turner, Antitrust Law* ¶ 517 (1978). The geographic market can be defined locally, regionally, *see United States v. Columbia Steel Co.*, 334 U.S. 495, 68 S.Ct. 1107, 92 L.Ed. 1533 (1948), or nationally, *see United States v. Aluminum Co. of. Am.*, 148 F.2d 416 (2nd Cir. 1945). The relevant product or service market is defined according to the cross-elasticity of demand (substitutability) of other products or services. *See Grinnell*, 384 U.S. at 570–76, 86 S.Ct. 1698; *du Pont*, 351 U.S. at 394–404, 76 S.Ct. 994; *Times–Picayune Pub. Co. v.*

*United States*, 345 U.S. 594, 612 n. 31, 73 S.Ct. 872, 97 L.Ed. 1277 (1953). *But see* Turner, *Antitrust Policy and the Cellophane Case*, 70 Harv.L.Rev. 281 (1956) (criticizing use of cross-elasticity theory).

10. Comfortex has also pleaded "inequitable conduct" on the part of Hunter Douglas as an affirmative defense. The record does not reveal an intention by Comfortex to bring and prove a claim of fraud. Therefore, this Court does not specifically address a *Walker Process* claim of fraud against the PTO. It should be noted, however, that the following analysis is applicable to a *Walker Process* claim as well.

11. This tenet is often referred to as the "Noerr–Pennington" *doctrine which was developed by the Supreme Court in two seminal cases. In* Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., *365 U.S. 127, 81*

this immunity, however, the antitrust laws fully apply when one feigns an effort to petition the government as "a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor." *Noerr*, 365 U.S. at 144, 81 S.Ct. 523. In *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.* 15 F.3d 1573 (Fed.Cir.1993), the Federal Circuit applied this exception in the patent/antitrust context and held that an antitrust counterclaim could be maintained if the underlying patent infringement suit is a "sham" and has not been brought in good faith. *Id.* at 1583.

■ Courts employ a two-prong test to determine whether the "sham" exception applies. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). First, the infringement suit must be "objectively baseless" (no reasonable litigant could realistically expect to succeed on the merits), *id.* at 59–60, 113 S.Ct. 1920; and, second, if "objectively baseless", the patentee in bringing the action must have subjectively intended to interfere with the business relationships of the accused infringer. *Id.* at 60, 113 S.Ct. 1920.

> Pertinent for the case sub judice,
>
> [i]f the patent infringement claim succeeds, then antitrust immunity is automatic, subject to one exception: If it should subsequently be determined that the claim's success depended on information the patentee knew or should have known at the time of presenting it to be false, then the suit could still be a 'sham' and thus satisfy the conduct requirement for a § 2 claim.

III Phillip E. Areeda and Herbert Hovenkamp, *Antitrust Law*, ¶ 709(b), at 196 (1996) (citing *FilmTec Corp. v. Hydranautics*, 67 F.3d 931 (Fed.Cir.1995)). Therefore, if Hunter Douglas succeeds in its patent infringement action, a significant portion of Comfortex's proof relative to its § 2 claim would become irrelevant. This could significantly shorten presentation of Comfortex's antitrust counterclaims. Likewise, during the patent infringement suit, Comfortex would have an opportunity to present its defenses of patent invalidity and inequitable conduct.[12] Resolution of these issues would become the law of the case and also eliminate some of the proof that would otherwise be necessary. Accordingly, the interest of judicial efficiency favors separating the patent issues from those grounded on antitrust principles.

■ Moreover, issues decided during the patent trial could become the law of the case for Comfortex's state tort counterclaims. For example, Comfortex counterclaims against Hunter Douglas on the ground of malicious prosecution. In New York, a plaintiff must show the following elements in order to make out a claim for malicious prosecution;

(1) commencement or continuance of a proceeding by the defendant against the plaintiff;

(2) termination of that proceeding in favor of the plaintiff;

(3) absence of probable cause for the proceeding; and

(4) actual malice.

*See Colon v. New York*, 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (N.Y.1983); *Pomento v. City of Rome*, 647 N.Y.S.2d 604, 605 (N.Y.App.Div.1996). Significant-

S.Ct. 523, 5 L.Ed.2d 464 (1961), the Court addressed the role of the First Amendment in the context of antitrust law. Finding that the antitrust laws did not abrogate the First Amendment, the Court granted immunity from antitrust liability to those who petitioned the government for assistance. Shortly thereafter, in United Mine Workers of America v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), the Court held that efforts

by a union to influence the Secretary of Labor to establish a minimum wage were protected under Noerr. The Court extended the protection of Noerr to individuals who file lawsuits. California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

**12.** *See infra* for discussion regarding Comfortex's patent misuse defense.

ly, a judicial determination in a prior civil proceeding against a malicious prosecution plaintiff gives rise to a presumption of probable cause. *See Malin v. Deutsch & Frey,* 142 A.D.2d 632, 531 N.Y.S.2d 9, 10–11 (N.Y.App.Div.1988) ("New York cases hold that when a judgment or decree was rendered against the malicious prosecution plaintiff in the prior action of which he complains, that fact is either conclusive or prima facie evidence of probable cause for the prior action. . . ." (internal quotations omitted). Thus, a finding that Comfortex infringed Hunter Douglas's valid patent would all but eliminate Comfortex's malicious prosecution claim. Conversely, a finding that Comfortex did not infringe a Hunter Douglas patent or that that patent was invalid would become the law of the case and, therefore, contribute to Comfortex's malicious prosecution claims.[13]

### 2. Convenience

Convenience to the parties will also be served by separation of the patent and antitrust issues. In arguing that Hunter Douglas's proposal will fail to promote convenience, Comfortex asserts that evidence relating to liability under both Hunter Douglas's claims and Comfortex' claims will involve the same evidence and witnesses. Comfortex Mem. at 6, 10; *see also id.* at 7 ("The determination of [all liability] issues involves many of the same set of operative facts concerning the scope and enforcement of Hunter Douglas' '999 and '217 patents.").[14] Faced with similar arguments, the Federal Circuit in *Innotron* stated that Innotron's

> own statements make clear that Innotron will have in the patent trial a determination on all of the basic evidence and facts on which its claim of 'patent type' antitrust violation is based. . . . Innotron's entire and extended argument, insisting on the substantial identity of the facts and evidence supporting its affirmative defenses and its antitrust counterclaim, is thus self-defeating.

800 F.2d at 1085. *See also Wang Labs., Inc. v. Mitsubishi Electronics, Am., Inc.,* 29 U.S.P.Q.2d 1481 (C.D.Cal.1993) (separating patent and antitrust issues because they arose from the same operative facts). Though Comfortex is correct that the Federal Circuit has not advocated the separation of antitrust and patent issues as an "inevitable practice," Comfortex Reply Mem. at 2, *Innotron* is still instructive here. Indeed, the reasoning adopted by the Federal Circuit is persuasive.

---

**13.** Comfortex also counterclaims pursuant to New York state law of prima facie tort. In order to make out a claim for prima facie tort, Comfortex will have to show that Hunter Douglas maliciously intended harm to Comfortex, without a justification for doing so. *Rad Advertising Inc. v. United Footwear Organization, Inc.,* 154 A.D.2d 309, 546 N.Y.S.2d 597, 598 (N.Y.App.Div.1989); *Sommer v. Kaufman,* 59 A.D.2d 843, 399 N.Y.S.2d 7, 8 (N.Y.App.Div.1977). If Hunter Douglas succeeds in establishing its infringement claim, it may eviscerate Comfortex's claim for prima facie tort because it would tend to show justification. Moreover, Comfortex's claims relative to Hunter Douglas's alleged interference with contractual relationships will more than likely disappear if it is shown that Comfortex infringed Hunter Douglas's valid patents because, in that case, (1) Comfortex would have no legal right to engage in the sale of its infringing product ab initio; and (2) Hunter Douglas's efforts to protect its valid and infringed patent could hardly be held to be

wrongful. *See NBT Bancorp, Inc. v. Fleet/Norstar Fin. Group,* 87 N.Y.2d 614, 641 N.Y.S.2d 581, 664 N.E.2d 492, 496 (N.Y. 1996) (requiring 'wrongful' action as necessary element to tort of interference with prospective contractual relationship) (citing *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 428 N.Y.S.2d 628, 406 N.E.2d 445, 451 (N.Y.1980)).

**14.** In *Laitram Corp. v. Hewlett–Packard Co.,* 791 F.Supp. 113 (E.D.La.1992), a case upon which Comfortex relies, the court separated a patent infringement trial into three phases: liability, damages, and willful infringement. The court found that because of overlapping evidence between patent liability and certain aspects of the damages issue, "[i]n the damages phase, the parties will not have to repeat any evidence relevant to liability that also bears on the reasonable royalty owed." *Id.* at 117. This is the precise principle applied here relative to Hunter Douglas's request to separate the patent and antitrust issues.

Comfortex's attempts to distinguish *Innotron* are unavailing. Comfortex points to the fact that in *Innotron*, the interest of expedition was served because the patent issues were trial ready whereas discovery for the antitrust issues was far from complete. This would indeed be a weighty distinction if "expedition" was a factor here. In the case sub judice, however, (1) discovery is complete for the patent and antitrust matters, (2) both parties are ready to proceed to trial, and (3) both parties agree to conduct the entire trial before a single jury (regardless of the trial format ultimately adopted by this Court). As a result, expedition is effectively a non-issue in this case. Stated otherwise, "expedition", as a factor to consider in the separation analysis, acts neither as an advantage nor a detriment to either party's position.

Notwithstanding the foregoing, both parties agree that the patent infringement trial can be completed in approximately five (5) days whereas a patent/antitrust trial would continue for at least three (3) weeks. A possibility that several antitrust and state tort issues could be resolved in a five day trial indeed serves the interest of expedition as well as judicial economy.

### 3. Prejudice

Finally, this Court examines the prejudice each party claims it will suffer if their respective opposition's position is accepted. *See Laitram*, 791 F.Supp. at 115 ("Prejudice is the Court's most important consideration in deciding whether to order separate trials under Rule 42(b)"). Hunter Douglas avers that it would be prejudiced because (1) presentation of Comfortex's counterclaims at the same time Hunter Douglas is trying to present its infringement action may unfairly sway the jury against Hunter Douglas who will be an accused monopolizer and (2) the jury would be confused because it would have the impossible task of compartmentalizing the legal, factual, and economic concerns inherent in both patent and antitrust matters. *See id.* (recognizing jury confusion

and complexity of issues as legitimate concerns) (citing *Mag Instrument, Inc. v. J. Baxter Brinkmann, Int'l Corp.*, 123 F.R.D. 543, 545 (N.D.Tex.1988)). Comfortex, on the other hand, claims that it will be prejudiced if Hunter Douglas is able to introduce evidence regarding damages at the same time it presents its patent liability suit. Moreover, Comfortex contends that it would be a waste of time and resources for Hunter Douglas to present damages evidence if the jury ultimately finds in Comfortex's favor on either the issue of infringement or validity.

Courts have recognized both Comfortex's and Hunter Douglas's theories of prejudicial effect. Some courts have supported Hunter Douglas's prejudice-from-a-"negative label"-theory. *See Totaltape, Inc. v. National Assoc. of State Bds. of Accountancy*, No. 85 Civ. 4241, 1987 WL 7736, at *9 (S.D.N.Y. March 4, 1987) (finding that counterclaim's allegations of racketeering are source of prejudice to plaintiff's underlying claims). Other courts have accepted Comfortex's position and have separated the damages and liabilities issue in patent suits. *See Laitram*, 791 F.Supp. at 115; *Mag Instrument, Inc.*, 123 F.R.D. at 544. Resolution of this matter is more easily made in light of Comfortex's proposed bifurcation relative to issues of patent liability.

### B. Comfortex's proposal

Comfortex's proposed trial structure carries considerable force relative to the separation of patent liability and patent damages. Specifically, such a separation will further the interests of judicial economy, convenience, expedition, and minimizing prejudice.

In *Eaton*, for example, the court separated the trial between liability (patent infringement and validity) and damages. 8 U.S.P.Q.2d at 1374. The court found the important interest of "efficient judicial administration" was served by separation because a determination of infringement and validity could possibly eliminate the need

to undertake a complex damages inquiry. *Id.* at 1375. While in *Eaton* the damages inquiry was predicted to take between two (2) to five (5) days, *id.*, and in the present case Hunter Douglas claims that it can present its case for reasonable royalties in one-half hour, the truly important feature of *Eaton* is the fact that the court advocated separation because it could possibly eliminate the need to address a second complex issue. *See also Laitram,* 791 F.Supp. at 115 ("If the jury finds certain bases of liability absent, then damages theories dependent on those bases, and evidence to support them, will not be presented, thus promoting expediency, economy, and convenience."); *Mag Instrument, Inc.,* 123 F.R.D. at 544 (noting courts have wide discretion in bifurcating trials "particularly when trying one issue *could* dispose of the others.") (citations omitted) (emphasis added). The same principle applies here. Simply stated, without patent liability, there will be no need to inquire as to Hunter Douglas's damages, thus potentially bolstering convenience and judicial economy.

A separate patent damages phase will not cause undue delay in the trial. Hunter Douglas avers that it will take approximately one-half hour to present its damages case. Even tripling that estimation and allowing for Comfortex's rebuttal will not act to slow the trial considerably. Furthermore, a separate damages phase would immediately follow a patent liability phase and be presented before the same jury. As a result, the interest of expedition is not negatively impacted.

Finally, separating patent liability from patent damages will also not have a prejudicial effect on either Comfortex or Hunter Douglas. In particular; though Comfortex objects to Hunter Douglas's presentation of damages evidence at the same time Hunter Douglas presents its patent liability case, Comfortex does not claim that it will be prejudiced by Hunter Douglas's presentation of royalty damages evidence prior to Confortex's presentation of its

counterclaims. Moreover, neither party has claimed that patent liability and damages issues are so inextricably intertwined that prejudice would result to either party from a failure to consolidate same. This Court does not see any reason to believe that such prejudice would be manifest.

**C. General Trial Structure**

Consequently, the structure of the trial in the case sub judice shall be a trifurcated hybrid of both parties' respective proposals. Hunter Douglas will present the liability aspect of its patent case first. No testimony or other evidence regarding Hunter Douglas's damages shall be presented during this first stage. Comfortex will have the opportunity to present its affirmative defenses and counterclaims seeking declaratory judgment as to the infringement, invalidity, or unenforceability of the '999 and '217 patents. This Court will then present the jury with special verdict as to patent liability. *See Hewlett–Packard Co. v. Genrad, Inc.,* 882 F.Supp. 1141 (D.Mass.1995). *See also Wang Labs.,* 1993 WL 645933, at *4; *Joy Technologies, Inc. v. Flakt, Inc.,* 772 F.Supp. 842, 849 (D.Del.1991) (unitary trial favored when court can resolve problems by bifurcating into separate phases of the same trial). Depending on the outcome thereof, the trial will then proceed immediately to either the damages aspect of the patent infringement claim, or to the presentation of Comfortex's remaining counterclaims.

**D. Patent Misuse**

One thorny issue remaining is whether the affirmative defense of patent misuse should be grouped with the patent issues or with Comfortex's counterclaims. Patent misuse is an equitable doctrine that prevents a patentee from enforcing patent rights through wrongful action. The Supreme Court explained the doctrine as:

It is a principle of general application that courts ... may appropriately withhold their aid where the plaintiff is using the right asserted contrary to the public

interest. It is the adverse effect upon the public interest of a successful infringement suit in conjunction with the patentee's course of conduct which disqualifies him to maintain the suit, regardless of whether the particular defendant has suffered from the misuse of the patent.... The patentee, like other holders of an exclusive privilege granted in the furtherance of a public policy, may not claim protection of his grant by the courts where it is being used to subvert that policy.

*Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 492–95, 62 S.Ct. 402, 86 L.Ed. 363 (1942).

■ One who misuses a patent does not also necessarily violate the antitrust laws. In order to put forth a successful patent misuse defense, an alleged infringer must prove that the patent holder "has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed.Cir.1986).[15] Clearly, a patentee who uses a patent to violate the antitrust laws is guilty of patent misuse; if a patentee's action does not qualify as an antitrust violation, however, it may still be subject to the patent misuse defense. For example, in *Transparent–Wrap Mach. Corp. v. Stokes & Smith Co.*, 329 U.S. 637, 67 S.Ct. 610, 91 L.Ed. 563 (1947), the Supreme Court stated the following:

> Though control of the unpatented article or device falls short of a prohibited restraint of trade or monopoly, it will not be sanctioned.... For it is the tendency in that direction which condemns the practice and which, if approved by a court either through enjoining infringement or enforcing the covenant, would receive a powerful impetus.

*Id.* at 641, 67 S.Ct. 610 (citing *Morton Salt*, 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363). Nevertheless, commentators have recognized that "a close relationship clearly exists between the misuse doctrine and the antitrust laws." 6 Donald S. Chisum, *Chisum on Patents*, § 19.04, at 19–300 (1994). *See also Hensley Equip. Co. v. Esco Corp.*, 383 F.2d 252, 261 (5th Cir.1967) ("[T]he activities giving rise to patent misuse frequently have actual or anticipated adverse effects on competition, [and therefore] there is a close relationship between the patent misuse doctrine and antitrust law.").

Given the complex interaction between the patent misuse doctrine and antitrust principles, lower courts have split as to whether the misuse defense should be dealt with as a patent or antitrust matter in the context of a Rule 42 decision. Some lower courts have placed misuse with antitrust issues because "[a]lthough as a legal matter, the patent misuse defense has more impact upon the infringement issues than upon the antitrust issues, when considering the orderly presentation of evidence the patent misuse defense is more appropriately tried along with the antitrust issues." *Virginia Panel Corp. v. Mac Panel Co.*, 887 F.Supp. 880, 884 (W.D.Va. 1995), *aff'd*, 133 F.3d 860 (Fed.Cir.1997). Other courts, however, have separated patent misuse and antitrust issues "[n]otwithstanding some overlap between [the] ... infringement defenses and [the] affirmative antitrust and tort claims". *Wang Labs.*, 1993 WL 645933, at *4. The *Wang Labs.* court reasoned that, though similar, antitrust claims and the misuse defense are distinct, and, therefore, only those additional elements left unresolved in the presentation of the misuse defense will remain for the antitrust phase of the trial. *Id.*

**15.** Congress amended the patent law in 1988 such that practices including (1) licensing or deriving revenue from those who would otherwise be contributory infringers of the patent, (2) unilaterally refusing to license or use any rights to the patent, and (3) enforcing the patent against infringers or contributory infringers cannot be used to support a finding of patent misuse. 35 U.S.C. § 271(d) (1994). Section (d) was further amended to mandate that even a tying arrangement could not be the basis of a patent misuse defense unless the patentee had market power in the relevant market. *See id.* § 271(d)(5).

In the abstract, the ultimate issue in determining the merit of a patent misuse defense is whether the patentee has sought to wrongfully extend the rights granted under the patent statute; not whether the patentee has violated the antitrust laws per se. Read in that light, it would in all cases make perfect sense as a matter of law to group the patent misuse defense with patent rather than antitrust issues. Practically speaking, however, a party claiming patent misuse predicated on alleged antitrust violations will present its most forceful case which will entail showing the patentee to be a violator of the antitrust laws. Thus, one missing the primary target of establishing antitrust liability may nonetheless meet the lesser burden of showing misuse. Antitrust and patent misuse, therefore, are connected as a matter of fact.

Juries are fact-finders and as such are called upon to apply the relevant law to the facts presented. In cases involving complex issues, legal or otherwise, the interest of promoting the most orderly presentation of facts takes on added significance. As the parties here apparently concede, the patent misuse defense will comprise the same essential operative facts as the antitrust claims. *See* Hunter Douglas's Mem. in Opp'n, Dkt. # 92, at 4 (" '[P]roof of Comfortex' patent misuse defense will involve the same operative facts as Comfortex' antitrust cause of action' ") (quoting Comfortex's Mem. at 10). Given the foregoing, the patent misuse defense is better grouped with Comfortex's antitrust counterclaims.

Further, patent misuse is more logically connected to antitrust and state tort issues rather than issues of patent liability. As presently constructed, the first phase of the trial will involve presentation of infringement, validity, and enforceability matters. Each of these pertains to (1) the formalities of the '999 and '217 patents as they existed on their respective dates of issuance and (2) the actions of Hunter Douglas during the prosecution of the '999 and '217 patents. Comfortex's antitrust claims as well as the misuse defense, on the other hand, relate to Hunter Douglas's conduct in practicing the patents.

Moreover, placing the misuse defense with the antitrust counterclaims maintains the economies derived from separating the patent liability issues from Comfortex's counterclaims. That is, grouping the misuse defense with the patent liability issues would inject antitrust issues into the patent liability phase when it has already been found that the interests of judicial economy, convenience, and minimizing prejudice are better served when the patent and antitrust issues remain separate.

It is not unusual for a jury to make a finding as to patent infringement independent of a finding of patent enforceability. A jury may in any given case find that a party has infringed another's patent but that the subject patent is unenforceable. Under the trial plan herein devised, one aspect of the enforceability determination is merely delayed. Accordingly, this Court finds that the patent misuse defense should be presented during the final (Comfortex counterclaim) phase of the trial.

In sum, Hunter Douglas's motion for separation pursuant to Fed.R.Civ.P. 42(b) is hereby GRANTED-in-part and DE-NIED-in-part; Comfortex's motion for separation pursuant to Fed.R.Civ.P. 42(b) is also hereby GRANTED-in-part and DE-NIED-in-part. The trial will proceed in three phases: the first phase will be limited to patent liability including issues of infringement, validity, and all of Comfortex's affirmative defenses excluding patent misuse; the second phase will be limited to patent damages if patent liability is found in the first phase; finally, the third phase of the trial will focus on Comfortex's federal antitrust and state tort law counterclaims as well as Comfortex's affirmative defense of patent misuse.

IT IS SO ORDERED.