**Joseph S. RODEK and Marion N. Rodek, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civil Action No. 95–811–JJF.**

United States District Court,
D. Delaware.

April 1, 1997.

Robert C. Lefton, of Robert C. Lefton, Wilmington, DE, for Plaintiffs.

Gregory M. Sleet, United States Attorney, David A. Green, Assistant United States Attorney, Wilmington, DE, Jonathan Jackel, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION

FARNAN, Chief Judge.

Presently before the Court are cross-motions for summary judgment filed by the parties in this civil action for a tax refund. Plaintiffs Joseph S. Rodek and Marion N. Rodek ("Plaintiffs") filed suit against the United States of America (the "Government") pursuant to 28 U.S.C. § 1346(a), seeking recovery of internal revenue taxes, which they allege were erroneously and illegally assessed against them and collected from them. Pursuant to the Court's Order dated May 6, 1996, Plaintiffs filed their Motion For Summary Judgment (D.I.13) and the Government filed its Motion For Summary Judgment (D.I.17). For the reasons set forth below, the Court has granted the Government's Motion For Summary Judgment (D.I.17) and has denied Plaintiffs' Motion for Summary Judgment (D.I.13).

## STATEMENT OF FACTS

In a timely fashion, Plaintiffs filed their 1980 and 1983 income tax returns and paid all taxes shown as due on those returns. As indicated on the 1983 return, Plaintiffs had an investment tax credit from an investment in a tax shelter. Plaintiffs claimed that they were entitled to carryback the unused portion of the credit to 1980. This claimed credit and carryback resulted in an overpayment of tax for both 1980 and 1983. In 1984, Plaintiffs made a timely claim for a refund.

Following their claim for a refund, Internal Revenue Service ("IRS") records indicate that the United States Treasury issued two refund checks. On May 30, 1984, a check in the amount of $3,706.92 was issued for the 1983 refund, and on July 30, 1984, a check in

the amount of $6,739 was issued for the 1980 refund. Both checks were purportedly negotiated and paid with funds of the United States, withdrawn from the Treasury. Once the checks were issued, IRS tax records indicate that Plaintiffs' accounts for 1980 and 1983 had zero balances, indicating neither underpayment nor overpayment for either year. (D.I. 18 at 3).

However, Plaintiffs allege that they never received the refund checks. (D.I. 14 at 4). Because the Treasury only retains canceled checks for six years and seven months after issuance, any checks issued in 1984 were destroyed. (D.I. 18 at 3).

In 1991, the IRS determined that the tax shelter that generated Plaintiffs' 1983 tax credit, was not legitimate and Plaintiffs were not entitled to the credit claimed in 1983. (D.I. 18 at 3). Plaintiffs and the IRS agreed on the additional liability Plaintiffs owed and entered into a settlement agreement. The IRS then timely made an additional assessment of tax for tax years 1980 and 1983. Because the IRS had already issued the refunds for 1980 and 1983, Plaintiffs had no credit balance in their account. Therefore, Plaintiffs did not receive additional credit for the 1980 and 1983 refunds when the new assessments were made. In November and December 1994, Plaintiffs paid the 1991 assessments. (D.I. 18 at 3–4).

However, on the date of the new assessments, on May 2, 1991, Plaintiffs wrote a letter to the IRS informing them that their 1980 and 1983 refund checks were missing. (D.I. 18 at 4). Because this letter came almost seven years after the 1983 refund check was issued and six years and 10 months after the 1980 check was issued, the checks Plaintiffs referred to had already been destroyed by the IRS according to their policies.

In April 1995, nearly 11 years after the checks were issued, Plaintiffs filed amended returns on Forms 1040X indicating that they had not received the refund checks, and that they had overpaid their taxes because of their November and December 1994 payments relating to their settlement agreement with the IRS. (D.I. 14 at 10). On May 10, 1995, Plaintiffs submitted Forms 3911, "Tax-

payer Statement Regarding Refund," indicating that they had not received their refund checks. On July 25, 1995, the IRS informed Plaintiffs that it took the position that the refund checks had been issued and cashed, and that their claims were denied. (D.I. 18 at 4). Believing that the refund checks were actually issued, but "frozen" administratively by the IRS as part of its program regarding abusive tax shelter, Plaintiffs filed this lawsuit seeking their refunds. (D.I. 14 at 11).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The Court does not resolve questions of disputed fact, but rather simply decides whether there is a genuine issue of fact which must be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Ettinger v. Johnson*, 556 F.2d 692 (3d Cir.1977). The facts must be viewed in the light most favorable to the non-moving party, and reasonable doubt as to the existence of a genuine issue of material fact is to be resolved against the moving party. *Continental Insurance Co. v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). If, drawing all factual inferences against the movant, the other party could not prevail at trial, then the movant is entitled to judgment as a matter of law.

## DISCUSSION

In applying the summary judgment standard in this case, the Court will accept as true Plaintiffs' assertion that they did not receive their refund checks in the mail. However, even if Plaintiffs did not receive the refund checks to which they were entitled, the Government is still entitled to judgment as a matter of law based on the Government's affirmative defenses of the statute of limitations and the equitable doctrine of laches.

## I. Statute of Limitations

■ The procedure governing "any claim on account of a Treasury check" is set forth in 31 U.S.C. § 3702(c). Under this section, a person who believes they are entitled to payment, but who has not received a Treasury check, may make a claim with the agency that authorized the check. However, as the section further details, claimants must present the agency with such a claim within one year of issuance of the check or the effective date of the amendment, whichever is later. In this case, because the checks were issued in 1984, the effective date of the amendments, October 1, 1989, should be used to set the limitations period. Accordingly, the latest possible time for Plaintiffs to file their refund claims was October 1, 1990. In this case, the earliest communication of a claim by Plaintiffs to the IRS concerning the missing refund checks occurred after October 1, 1990. Therefore, Plaintiffs' claims based on the 1984 refund checks are barred by the statute of limitations.

Indeed, Plaintiffs admit that the statute of limitations would be a valid defense if they were claiming refunds of the taxes originally paid on their 1980 and 1983 tax returns or if they were seeking replacements for the 1984 refund checks. However, Plaintiffs argue that their claims are not based on the 1980 and 1983 refunds or the 1984 refund checks. Rather, Plaintiffs prefer to characterize their action as one based on the refund claims filed in 1995, for the overpayment of taxes in 1994.

In reviewing the arguments submitted by the parties on the issue of the proper characterization of Plaintiffs' claims, the Court declines to accept Plaintiffs' characterization. Instead, the Court agrees with the Government that Plaintiffs' 1995 refund claim for taxes overpaid in 1994, is an attempt to mask Plaintiffs' true claim, which rests on the refund checks that they allegedly did not receive. Indeed, the Court's interpretation of Plaintiffs' claim is supported by Plaintiffs' own admission that "Plaintiffs' claims are for taxes overpaid in 1994, *the reason for which*

overpayments is that, for whatever reason, plaintiffs did not receive checks for the refunds which they claimed in 1984." (D.I. 20 at 8, emphasis added). As such, Plaintiffs admit that their claims are, in fact, based on the 1984 refund checks. Therefore, in accord with the statute of limitations analysis previously set forth, the Court concludes that Plaintiffs' claims are time barred.

## II. Laches

■ Even if the Court were to disregard the applicable statute of limitations, under the circumstances presented, Plaintiffs' claims would still be barred by the equitable doctrine of laches. The defense of laches requires a showing of (1) unreasonable delay in the assertion of the claim, and (2) prejudice or resulting injury.[1] *See Joy Technologies, Inc. v. Flakt, Inc.*, 772 F.Supp. 842 (D.Del.1991). However, because laches is an equitable doctrine, it may be applied with more flexibility than the statute of limitations.

In opposing the Government's laches argument, Plaintiffs make two arguments. First, Plaintiffs argue that because their action is an action at law, the equitable doctrine of laches should not apply. Second, if laches does apply, Plaintiffs argue that the elements of the laches defense are not established in this case.

■ In examining the origins of tax refund lawsuits, the United States Supreme Court recognized that these suits originated in the common law action for assumpsit, or money had and received. *United States v. Williams*, 514 U.S. 527, ——, 115 S.Ct. 1611 1616, 131 L.Ed.2d 608 (1995). Because, an action in assumpsit for "money had and received" is equitable in nature, the application of equitable principles is proper. *See United States v. Jefferson Electric Mfg. Co.*, 291 U.S. 386, 402–403, 54 S.Ct. 443, 449, 78 L.Ed. 859 (1934) (noting that assumpsit is "often called an equitable action and is less restricted and fettered by technical rules and formalities than any other form of action."); *see also*

---

1. Plaintiffs argue that the appropriate standard is whether the delay was "excusable," not whether it was "unreasonable." Because laches is an equitable doctrine that is to be applied with some flexibility, the Court's view is that this is a distinction without a difference. Therefore, the Court will refer to both terms interchangeably.

*Wilson & Co. v. Douredoure,* 154 F.2d 442, 445 (3d Cir.1946); *E.F. Drew & Co. v. Southern Grocery Stores,* 183 A. 511, 512 (Del.Super.1935) Therefore, the Court concludes that because Plaintiffs' lawsuit is a tax refund lawsuit, with its origins in the equitable action of assumpsit, the doctrine of laches may be applied.

■ In applying the requirements of the doctrine of laches in this case, the Court concludes that Plaintiffs' claims are time barred. First, Plaintiffs assert that their delay was reasonable or excusable, because they relied on the advice of their accountant.[2] Although a short delay may have been reasonable, Plaintiffs waited approximately 7 years until 1991 to even mention the missing refund checks to the IRS. Moreover, Plaintiffs did not even file their refund claim based on those checks at that time. Instead, they waited until 1995 to file a formal claim. The Court cannot conclude that a delay of over seven years is reasonable.

■ Second, the Court finds that the Government was prejudiced by Plaintiffs lengthy delay. By the time Plaintiffs notified the Government about the missing checks, the time period for the Government to civilly pursue any third party who claimed Plaintiffs checks, had expired. Moreover, the Government lost their best evidence relating to these claims, i.e. the canceled checks, because pursuant to its policy, the Government only retains checks for a period of six years and seven months after issuance. Because of Plaintiffs' delay, the Government lost valuable evidence and means of redress, and was, therefore, prejudiced.

## CONCLUSION

For the reasons discussed, the Government's Motion For Summary Judgment (D.I.17) has been granted, and Plaintiffs' Motion For Summary Judgment (D.I.13) has been denied.

---

2. The accountant, who prepared Plaintiffs' 1983 and 1984 income tax returns and who advised Plaintiffs' regarding their refund claims, is Plain-

tiffs' daughter, Corinne Eisenstein, who resided in Connecticut at the time of these events. (D.I.16).