**Michael P. PAALAN, pro se, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 01–448C.

United States Court of Federal Claims.

Sept. 30, 2003.

Michael P. Paalan, Fort Leavenworth, Kansas, pro se.

Richard P. Schroeder, Washington, D.C., for defendant, United States Department of Justice.

## MEMORANDUM OPINION

BRADEN, Judge.

Plaintiff summarized the gist of his August 1, 2001 complaint as follows: "Simply put, I was robbed over seven (7) years ago and I seek only the money I am entitled to and no more." June 9, 2003, Plaintiff's Response at 46. This action concerns a claim for certain military back pay and a compensation claim for the seizure of certain personal property under the Just Compensation Clause of the Fifth Amendment of the United States Constitution. Plaintiff's military pay claim is now barred because of a failure to exhaust administrative remedies and the statute of limitations. Plaintiff's Just Compensation Claim fails for two reasons. First, plaintiff has not shown a constitutionally protected interest in personal property that was introduced as evidence in his court-martial or may be relevant to an appeal, which is still pending. Second, the taking of plaintiff's personal property is not compensable under the Fifth Amendment of the United States Constitution because it was taken pursuant to government's police power. Therefore, both claims are dismissed as a matter of law, with prejudice, for the reasons discussed herein.

### Relevant Facts and Procedural History

Plaintiff is a former petty officer of the United States Navy ("Navy" or "government") and currently is serving a thirty-year sentence for murder, weapons possession, and drug offenses. *See Paalan v. United States,* 51 Fed.Cl. 738, 741 (2002). The court previously dismissed several of plaintiff's claims. *Id.* at 753–54 (dismissing claims for military pay accrued after November 28,

1995; denying motion to dismiss claims for military pay before November 28, 1995; dismissing Just Compensation claims in part and granting in part; denying motion for summary judgment; and granting limited discovery). After the court's ruling in *Paalan*, the government renewed its motion for summary judgment on the two remaining claims. *See* Dec. 2, 2002, motion to dismiss. The remaining two claims now ripe for adjudication are: whether plaintiff is entitled to receive military pay for pay checks, issued between October 13, 1995 and November 28, 1995, which were never received nor negotiated by plaintiff; and whether the Navy's seizure and retention of certain of plaintiff's personal property, other than plaintiff's gun and ammunition, gives rise to a Just Compensation Claim.

The following is a summary of the relevant facts previously discussed in detail in *Paalan*, 51 Fed.Cl. at 740–42. Plaintiff's military career with the Navy began on August 27, 1975. On March 1, 1989 plaintiff voluntarily re-enlisted and on February 12, 1991 requested to extend his enlistment until November 28, 1995. In anticipation of retirement, plaintiff requested a transfer to the Navy's Fleet Reserve. The transfer was authorized by plaintiff's Commanding Officer on October 31, 1994 and by the Bureau of Naval Personnel on January 18, 1995. Thereafter, plaintiff's release date was changed from November 28, 1995 to October 31, 1995. Upon completion of the statutory prerequisites for transfer from active duty to Fleet Reserve, plaintiff received a certificate of discharge on August 4, 1995, effective as of October 31, 1995. Plaintiff then took accrued leave from August 5, 1995 to September 25, 1995 and was placed on Permissive Temporary Duty on September 26, 1995 until October 31, 1995.

On October 11, 1995, while on Permissive Temporary Duty, plaintiff was apprehended by the Navy Criminal Investigative Service ("NCIS") and placed in pretrial custody in connection with the November 1989 death of a South Carolina woman. Subsequently, the Navy extended plaintiff's discharge date to November 28, 1995, pending a court-marital. In the interim, the Navy continued to pay plaintiff's salary by electronic funds transfer. *See* Dec. 2, 2002, Decl. of Nancy Bernard, Lead Accountant for the Reconciliation Branch, Expenditure Reporting Division of the Accounting Directorate at Defense Finance and Accounting Service, Cleveland, at ¶ 3. Between October 13, 1995 and November 28, 1995, the Navy paid plaintiff's salary by issuing United States Treasury checks addressed to the Naval Air Station in Jacksonville, Florida, where he was in custody. The pay checks issued on November 1 and 13, 1995 were presented by a third party for payment and negotiated. *Id.* at ¶¶ 3–4. A pay check issued on October 23, 1995 was never deposited nor negotiated and was returned to Personnel Support Activity, Jacksonville, Florida. *Id.* at ¶ 3.

On April 17, 1996, after plaintiff pled guilty to premeditated murder, weapons possession, and certain drug offenses, he was sentenced to life confinement, forfeiture of all pay and allowances, a reduction in pay grade, and a dishonorable discharge. Following a successful ineffective assistance of counsel post-trial motion, plaintiff was re-sentenced to a thirty-year prison term. In addition, plaintiff's pay grade was reduced, all pay and allowances were forfeited, and he received a dishonorable discharge. Plaintiff's appeal of that conviction is still pending.

On October 12, 1995, certain of plaintiff's personal effects were confiscated at the time of his arrest, detention, and confinement, pursuant to Navy regulations. *See* Secretary of the Navy Instruction ("SECNAVINST") 1640.9A ("Prisoners shall not be permitted to retain in their possession . . . personal property of value."). Some of this property had potential evidentiary value relevant to plaintiff's court-martial. *See* Dec. 2, 2002, Decl. of Rebecca New, Investigative Assistant, NCIS Resident Unit, Charleston, South Carolina, at ¶¶ 2–4. The Navy continues to retain custody and control of this property, but has been unable to locate the remainder of plaintiff's private property, consisting mainly of used clothes, towels, toiletries, and a cellular phone. *See* Oct. 10, 2001, First Amend. Complaint (Attachments 2–7).

On December 2, 2002, the government filed a motion for summary judgment regard-

ing plaintiff's claim for military pay checks issued between October 13, 1995 and November 28, 1995 but not received by him, as well as the Navy's seizure and retention of certain of plaintiff's missing personal effects.

### Standard of Review

Summary judgment is required where there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." RCFC 56(c). No genuine issue of material fact exists when a rational trier of fact could only arrive at one reasonable conclusion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, if the non-moving party produces sufficient evidence to raise a question that would alter the outcome of the case, summary judgment must be denied. *Id.* In making this determination, the court must resolve any doubt over a factual issue in favor of the non-moving party. *Id.* at 587–88, 106 S.Ct. 1348.

The party moving for summary judgment has the burden to establish the absence of any genuine disputes of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that the "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion ... which it believes demonstrate[s] the absence of a genuine issue of material fact."). Once the movant discharges this burden, the non-moving party must state sufficient specific facts to demonstrate there is a genuine dispute of fact for trial. *See Matsushita*, 475 U.S. at 586–87, 106 S.Ct. 1348. Thus, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting FED. R. CIV. P. 56); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) ("The object of [FED. R. CIV. P 56(e)] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit."). Ultimately, "[o]nly disputes over facts that might affect the outcome of the suit ... will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### Discussion

**1. Plaintiff's Motion to Strike**

■ In support of the government's December 2, 2002 motion for summary judgment, the declaration of Ms. Rebecca New was attached. *See* Dec. 2, 2002, Decl. of Rebecca New. Ms. New's duties include maintaining and storing the evidence concerning plaintiff's court-martial. *Id.* Plaintiff asserts that Ms. New's declaration is "immaterial, impertinent, and scandalous[.]" *See* Jan. 13, 2003, Plaintiff's Motion to Strike at ¶ 15. In addition, plaintiff argues that Ms. New has no personal knowledge about the circumstances under which his property was confiscated or the legal ramifications of such confiscation. *Id.*

To the extent that plaintiff's motion seeks to exclude Ms. New's declaration on the grounds of relevance, materiality, or prejudice, the court denies that request. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Ms. New, as Evidence Custodian, clearly is qualified to testify regarding the circumstances under which plaintiff's personal property was confiscated and maintained by the Navy. Conversely, plaintiff argues that Ms. New's declaration is relevant and material to his Just Compensation Claim, in so far as it confirms the Navy's continued retention of his personal effects. The court may exclude relevant evidence only where its probative value is substantially outweighed by a danger of unfair prejudice. *See* FED. R. EVID. 403. No prejudice has been asserted or established in this case. Accordingly, plaintiff's motion to strike is denied.

**2. Plaintiff's Motions For Leave To Add New Findings of Incontrovertible Facts and File Reply By Facsimile**

On June 9, 2003, plaintiff filed a motion for leave to add new findings of incontrovertible

facts. The interests of justice require the court to grant this motion to support plaintiff's June 9, 2003 opposition to the government's December 22, 2002 motion for summary judgment. For the same reasons, plaintiff's September 2, 2003 motion to file reply by facsimile is also granted.

### 3. The Government's and Plaintiff's Motions For Summary Judgment

On December 22, 2002, the government filed a motion for summary judgment; plaintiff has been permitted to supplement the record and reply to this motion.

#### a.) Military Pay Claim

■ Plaintiff's claim for military pay is based on the Navy's failure to deliver pay due between October 13, 1995 and November 28, 1995 by electronic fund transfer or direct deposit, rather than by checks sent by U.S. mail. As a matter of law, however, the Navy was not required to deposit pay checks by electronic funds transfer until January 1999. *See* 31 U.S.C. § 3332 (2003); *see also* Department of Defense Financial Management Regulation Ch. 7, ¶ 070103 (requiring that "all federal payments … be made via electronic funds transfer (EFT) by January 1999."). Moreover, "[a]ny claim on account of a Treasury check shall be barred unless it is presented to the agency that authorized the issuance of such check within 1 year after the date of the issuance of the check[.]" 31 U.S.C. § 3702(c)(1) (2003). It has long been a keystone of administrative law that "[w]here relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter v. Cooper,* 507 U.S. 258, 269, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). When Congress expressly requires exhaustion of administrative remedies before suit may be brought, "exhaustion is, of course, mandatory." *Martinez v. United States,* 333 F.3d 1295, 1305 (Fed.Cir.2003) (en banc). Here, plaintiff made no effort to pursue the mandatory administrative remedy

provided by federal statute. Accordingly, plaintiff's military pay claim, as a matter of law, is now barred.

■ The checks in question were issued over eight years ago and the statute of limitations for such an administrative claim runs from one year after the date of the issuance of the check. *See* 31 U.S.C. § 3702(c)(1) ("Any claim on account of a Treasury check shall be barred unless it is presented to the agency that authorized the issuance of such check within 1 year after the date of the issuance of the check[.]"); *see also Your Ins. Needs Agency, Inc. v. United States,* 274 F.3d 1001, 1004–07 (5th Cir.2001) (holding that recovery was barred by 31 U.S.C. § 3702(c)(1) when taxpayers failed to file timely claims for replacement checks); *Rodek v. United States,* 962 F.Supp. 34, 35–37 (D.Del.1997) (applying 31 U.S.C. § 3702(c)(1) to time bar a claim based on refund checks where Internal Revenue Service records indicated that the United States Treasury Department issued two refund checks, even though the plaintiff claimed that they were never received).

Plaintiff's asserts, however, that the statute of limitations in 31 U.S.C. § 3702(c)(1) should be equitably tolled. June 9, 2003, Plaintiff's Reply at 10–12. The United States Court of Appeals for the Federal Circuit has instructed the court that equitable tolling may only be imposed:

where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.

*Santana–Venegas v. Principi,* 314 F.3d 1293, 1296 (Fed.Cir.2002). The facts of this case do not support the invocation of equitable tolling. In any event, notwithstanding plaintiff's allegations that the pay checks were not properly addressed, the pay checks at issue were indeed sent to plaintiff's place of confinement in Jacksonville, Florida. *See* Dec. 2, 2002, Decl. of Nancy Bernard at ¶¶ 3–4 (Exhibits A—P).[1] Plaintiff has admitted that

---

1. Plaintiff did not move to strike the Bernard declaration, as was done with the New declara-

tion, however, such a motion would be to no avail. The court finds that Ms. Bernard is quali-

he was aware, at least as early as November 1995, that he did not receive his salary for the period in question. *See* Sept. 2, 2003, Decl. of Michael Paalan at 4 ("Sometime after 01 November 1995, my mother . . . and [former] wife . . . both informed me that . . . no active duty pay, or retainer pay had been deposited into my account by either Direct Deposit, or EFT [electronic funds transfer]."). Accordingly, plaintiff is unable to claim that he was unaware of the situation until after the statute of limitations expired. Therefore, as a matter of law, plaintiff's military pay claim is dismissed.

### b.) Just Compensation Claim

The court previously ruled, as a matter of law, that plaintiff's gun and ammunition could not be subject to a Just Compensation Claim because the plaintiff had no constitutionally protected interest in personal property that may be introduced at a court-martial as evidence. *See Paalan,* 51 Fed.Cl. at 751. The court also held that plaintiff may not base a Just Compensation Claim on the Navy's apparent loss of certain of his personal property effects because that property was not taken for public use. *Id.* Nevertheless, the court allowed plaintiff's Just Compensation Claim to survive for two reasons. First, the court posited that the Navy's continued possession of certain of plaintiff's personal property may amount to a "taking" because the government's interest in the property could be stale. *Id.* Second, the court found that the Navy did not establish that these personal effects were confiscated in accordance with government regulation. *Id.* at 752 n. 10. ("A plaintiff cannot state a takings claim for property the use of which has been lawfully restricted through normal administrative processes.").

■ Plaintiff's Just Compensation Claim concerns two categories of private property: that seized at the time of his arrest and thereby potential evidence in the court-martial or relevant to subsequent judicial proceedings, and personal effects seized at the same time. To the extent that certain property was seized as potential evidence, plaintiff fails to establish a valid property interest

that can be the subject of a Just Compensation Claim. *See Warden, Md. Penitentiary v. Hayden,* 387 U.S. 294, 306, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (holding that the government "may seize evidence simply for the purpose of proving a crime[.]"). In addition, since appellate review of plaintiff's court martial is not complete, plaintiff's claim for the return of property with evidentiary value is premature for judicial review. Accordingly, plaintiff fails to state a compensable claim as to personal property seized and held by the government for evidentiary purposes.

■ As to the second category of personal property, the government asserts that the personal effects at issue were lawfully seized in full compliance with Navy regulation that prohibits a prisoner from retaining certain personal property when confined. *See* SECNAVINST 1640.9A (providing that "Prisoners shall not be permitted to retain in their possession . . . personal property of value. Wedding rings and small religious medals are permitted and the commanding officer may authorize retention of other items of limited intrinsic value. Items which have not been approved shall be retained by the custodian[.]"). Plaintiff contends the Instruction is not relevant since he was a pretrial detainee and not a prisoner. The court does not interpret the Instruction to elevate the ordinary meaning of "prisoner" to be a term of art. Rather, the Instruction should be read as applying to all persons involuntarily confined. *See, e.g., Shalala v. Whitecotton,* 514 U.S. 268, 277, 115 S.Ct. 1477, 131 L.Ed.2d 374 (1995) (stating that the Court "relies on a commonsense consideration of the words[.]") (O'Connor, J., concurring opinion).

Long ago, the Supreme Court instructed the lower courts to distinguish between the taking of private property for public use and the restriction or deprivation of private property undertaken in connection with the proper exercise of state police power. *See Hamilton v. Kentucky Distilleries & Warehouse Co.,* 251 U.S. 146, 156–57, 40 S.Ct. 106, 64 L.Ed. 194 (1919) ("If the nature and conditions of a restriction upon the use or disposition of property is such that a state could,

---

fied to testify about the issuance and procedures

regarding the pay checks at issue.

under the police power, impose it consistently with the Fourteenth Amendment without making compensation, then the United States may for a permitted purpose impose a like restriction consistently with the Fifth Amendment without making compensation[.]"). The Court characterized the latter as mere forfeitures which required no compensation. *Id.* at 155–57, 40 S.Ct. 106; *see also Bennis v. Michigan,* 516 U.S. 442, 452, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996) (holding that the government may not be required to compensate an owner for property that lawfully was acquired through the exercise of governmental authority, other than eminent domain); *Savko v. Rollins,* 749 F.Supp. 1403, 1412–14 (D.Md.1990) (listing cases that analogize the confiscation of an inmate's property, that is neither a fruit nor instrumentality of a crime, to statutory forfeiture, a valid exercise of state police power). Plaintiff's claim regarding the seizure of certain private property with no potential evidentiary value must fail because such property was confiscated pursuant to applicable regulations, for which the Fifth Amendment provides no protection. *See Paalan,* 51 Fed.Cl. at 752 n. 10. Accordingly, as a matter of law, plaintiff's claim for Just Compensation is dismissed.

The government's motion for summary judgment is granted and the plaintiff's motion for summary judgment is moot and thereby is denied.

### 4. Other Pending Motions

#### a.) Plaintiff's Motions for Reconsideration

On March 4, 2002, plaintiff asked the court to reconsider orders entered on March 4, 2002 and May 20, 2003. The court clearly has discretion to decide whether to grant reconsideration. *See Yuba Natural Res., Inc. v. United States,* 904 F.2d 1577, 1583 (Fed.Cir.1990). Such a determination, however, must be based "upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court." *Bishop v. United States,* 26 Cl.Ct. 281, 286 (1992) (citations omitted).

On April 16, 2002, the court denied plaintiff's previous motion for reconsideration of the order, entered on March 4, 2002, as untimely. In light of that ruling, the court finds no persuasive additional reason to entertain another untimely motion to reconsider that order.

Plaintiff also moves the court to reconsider an order, entered on May 20, 2003, that dismissed a different complaint, Case No. 02–405, regarding military back pay for the period between April 15, 1996 and May 31, 2001. *See Paalan v. United States,* 57 Fed.Cl. 15, 18 (2003). The court has no jurisdiction to reconsider a final order entered in another case. Plaintiff's remedy is an appeal to the United States Court of Appeals for the Federal Circuit. Accordingly, plaintiff's motions to reconsider is denied as it relates to the March 4, 2002 order and dismissed as it relates to the May 20, 2003 order.

#### b.) Plaintiff's Motion to Proceed *in forma pauperis*

On August 1, 2001, plaintiff filed a motion to proceed *in forma pauperis.* The court grants the motion to the extent that plaintiff is not required to prepay filing fees.

#### c.) Plaintiff's Motion for Scheduling Order

On August 18, 2003, plaintiff filed a motion requesting a scheduling order which, in light of this memorandum opinion and the order to be entered by the Clerk of Court, is now moot and thereby is denied.

#### d.) Plaintiff's Motion to Stay

On October 10 and 15, 2002, plaintiff filed two motions to stay due to the unavailability of the prison law library. The court notes that plaintiff subsequently had ample time to prepare and respond adequately to the government's motion for summary judgment and file his own motion for summary judgment. Accordingly, the court finds that plaintiff's motions are moot and thereby are denied.

#### e.) Plaintiff's Motion for Leave to File a Reply

On December 9, 2002, plaintiff filed a motion for leave to file a reply to the government's motion for summary judgment. The

court grants the motion and takes notice of plaintiff's response in opposition to the government's motion for summary judgment. Accordingly, no further reply by the plaintiff is necessary.

### Conclusion

For the above reasons, plaintiff's January 13, 2003 motion to strike is DENIED; plaintiff's June 9, 2003 motion for leave to add new findings of incontrovertible facts and September 2, 2003 motion to file reply by facsimile are GRANTED; the government's December 22, 2002 motion for summary judgment is GRANTED; plaintiff's July 9, 2003 motion for summary judgment is DENIED; plaintiff's July 9, 2003 motion for reconsideration of the March 4, 2002 order is DENIED; plaintiff's July 9, 2003 motion for reconsideration of the May 20, 2003 order is DISMISSED; plaintiff's August 1, 2001 motion to proceed *in forma pauperis* is GRANTED; plaintiff's August 18, 2003 motion for a scheduling order is DENIED; plaintiff's October 10 and 15, 2002 motions to stay are DENIED; and, plaintiff's December 9, 2002 motion for leave to file a reply is GRANTED.

The Clerk of Court is directed to enter the judgment accordingly.

**IT IS SO ORDERED.**